IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| Celia Wilkins, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CIVIL ACTION NO. 07-G-1568-E |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Celia Wilkins, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end

this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In determining whether a claimant's disability benefits should be terminated, Social Security regulations outline an eight-step sequential process:

> To assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented, we will follow specific steps in reviewing the question of whether your disability continues. Our review may cease and benefits may be continued at any point if we determine there is sufficient evidence to find that you are still unable to engage in substantial gainful activity. The steps are as follows. (See paragraph (i) of this section if you work during your current period of entitlement based on disability or during certain other periods.)
>
> > (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
> >
> > (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
> >
> > (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b) (1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see §404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with §404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

>   (8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue

20 C.F.R. § 404.1594(f).

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

**DISCUSSION**

In the present case, ALJ Charles L. Brower proceeded through the sequential evaluation process, and determined the plaintiff could perform her past relevant work at step seven. [R 26]  This finding was based upon a mental residual functional capacity ("RFC") " to understand remember, and carry out instructions; and to respond appropriately to supervisors, co-workers, and work pressures in a work setting." [R 25] The ALJ made no explicit finding as to the plaintiff's physical RFC.  Therefore, he apparently found the plaintiff had no physical limitations in her ability to do work related activities.

In making his RFC finding, the ALJ relied on the report of the Commissioner's consultant Dr. Kline, who is not a licensed psychologist. (Comm'r's br. at 12).  The ALJ gave little weight to the plaintiff's treating psychologist, Dr. Brown.  His reasoning was as follows:

> First, I find that it is more than a coincidence that Claimant sought this therapy soon after receipt of the Administration's September 27, 2004, letter informing her of its determination that her disability had ceased.  Stated more bluntly: It appears that Claimant sought this treatment not because of her alleged mental impairments, but because she wanted to create a treatment record to rebut the Administration's determination.  Second, I question the bona fides of the symptoms she reported to Dr. Brown.  From the outset of psychotherapy with Dr. Brown, she reported severe symptoms of Panic Disorder, with agoraphobia – claiming that she had been unable to leave the house since being shot in 1995.  Yet in 2002 and 2003, according to Dr.Senyk's treatment records, she was routinely going to Wal-Mart, and in 2004, she told Dr. Klein that she went shopping once each week and went to Wal-Mart once each week.  Ironically, she listed "going to Wal-Mart" as a goal of psychotherapy, yet the [medical evidence of record] suggests that she had been going to Wal-Mart all along.

[R 25]  The ALJ's refusal to credit Dr. Brown was based largely on his speculation that the plaintiff sought treatment merely to create a treatment record. The ALJ did not cite any actual evidence to support this finding.  Additionally, even if the ALJ were correct in concluding that the plaintiff went to Dr. Brown in order to create a treatment record, there is no indication Dr. Brown fabricated medical diagnoses or findings.  In short, it was improper for the ALJ to refuse to credit Dr. Brown because the plaintiff first sought treatment after the Commissioner determined that her disability had ceased.

Elsewhere in his decision the ALJ speculated about the plaintiff's motivation in starting a new job just days before the hearing:

> At the hearing I wondered why she would start a new full time job just days before the hearing.  In retrospect, after receiving her post-hearing letter that describes her termination due to panic attacks, and after evaluating the timing of her psychotherapy with Dr. Brown described below, I can only <u>surmise</u> that she took the job while planning to engage in a series of pain panic attacks which would result in her termination and thereby provide evidence of continuing disability.

[R 18, n. 9 (emphasis added).]   This also represents nothing more than the ALJ's speculation, without any supporting evidence, as to the plaintiff's motivation in attempting to work.

An ALJ's decision must be based on evidence, not speculation.  In the present case, the ALJ improperly relied upon speculation, rather than on the evidence of record. The plaintiff  requested in her brief that the action be remanded for further development of the record.  In light of the ALJ's improper speculation as to the plaintiff's motivations in seeking treatment and in attempting to work, the court will remand the action for additional

proceedings.  On remand the Commissioner shall properly consider Dr. Brown's treatment notes in determining the plaintiff's RFC.  If the Commissioner chooses not to credit Dr. Brown's treatment notes, that decision must be based on evidence and not mere speculation.

In brief the Commissioner asserts that "[p]laintiff at all times had the burden of proving that she was disabled." (Comm'r's br. at 18).  However, the case cited by the Commissioner to support this assertion is not persuasive because it concerns an initial determination, not a termination of benefits decision.  On remand the Commissioner shall properly apply 42 § 423(f) and his implementing regulations, which place the burden in a termination case on the Commissioner to show the plaintiff has the ability to engage in substantial gainful activity.  See, Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994)("[W]e note that in the regulations implementing the Social Security Disability Benefits Reform Act 1984, 42 § 423(f),  the Secretary has recognized that before termination of benefits, the Secretary has the burden of showing the claimant has the ability to engage in substantial gainful activity."); Griego v. Sullivan, 940 F.2d 942, 944 (5th Cir. 1991)("[T]he ultimate burden of proof [on the issue of substantial gainful activity] lies with the Secretary in termination proceedings.").

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 25 June 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.